
RECEIVED
MAR 0 3 2006
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF CAREY SALT COMPANY, AS OWNER AND OPERATOR OF THE BARGE *TRIPPER III*, FOR EXONERATION FROM OR LIMITATION OF LIABILITY | CIVIL ACTION NO. 04-1631 <br><br> JUDGE DOHERTY <br><br> MAGISTRATE JUDGE HILL |

## MEMORANDUM RULING

Pending before this Court is a Motion for Summary Judgment to Dismiss Limitation Complaint filed on behalf of two of the claimants in this matter, John Sappington (on behalf of himself and his son, Jakob) and Michelle Sappington [hereinafter sometimes referenced collectively as "Movants"]. The motion is opposed by another claimant (Brian Paul Romero), as well as the plaintiff in limitation, Carey Salt Company, and its insurer, Continental Insurance Company [hereinafter sometimes referenced collectively as "Non-movants"]. The motion for summary judgment will be denied at this time in light of the substantial factual issues in dispute.

The undisputed facts in this case are very few. On February 3, 2004, John Sappington was operating a 21-foot Ranger bass boat in an easterly direction on the Intracoastal Waterway in St. Mary Parish, Louisiana. While doing so, he either allided or collided with a cable strung across the Waterway between one and three feet above the water line.[1] This cable enabled the *Tripper III*, a

---

[1] The parties do not agree as to the proper characterization of the accident. The Movants claim that the accident was a collision – *i.e.* unintended contact between two moving objects (Mr. Sappington's bass boat and the cable which was moving into position) – while the Non-movants claim that the accident was an allision because the cable was stationary prior to the time that Mr. Sappington's boat hit it. All parties have produced evidence in support of these two, incompatible characterizations. This discrepancy presents just one of the many factual issues which will have to be resolved at trial.

cable ferry, to move back and forth across the Waterway, and normally is de-tensioned (so that it drops into the water and out of harm's way) when a vessel approaches. In this particular case, arguably, the cable was not lowered into the water because Captain Romero did not see Mr. Sappington's approach. The parties to this action disagree – strongly – as to the cause of this accident and to whom fault (and, therefore, liability, if any) should attach.

The encounter resulted in severe injury to Mr. Sappington. He, his wife, and his son have asserted claims seeking to recover damages resulting from this accident. Within the delays permitted by law, Carey Salt Company, as owner and operator of the *Tripper III*, filed a petition for exoneration from and/or limitation of liability resulting from the accident. In response to the limitation petition, claims were asserted in this matter by the Movants, as well as Brian Paul Romero (the captain of the *Tripper III* at the time of the accident). In addition to their claim against Carey Salt Company, the Movants also asserted claims against Mr. Romero, Continental Insurance Company, and New York Marine & General Insurance Company. The Movants now seek the dismissal of Carey Salt Company's limitation action by summary judgment. In asserting this motion, the Movants allege that there is no genuine issue of material fact that negligence occurred which was within the privity and/or knowledge of Carey Salt Company.

The Limitation of Liability Act, 46 U.S.C. App. 183(a), establishes a limitation of liability for vessel owners under certain circumstances:

> The liability of the owner of any vessel. . . for any loss, damage, or injury by collision. . . done, occasioned, or incurred, without the privity or knowledge of such owner or owners, shall not. . . exceed the amount or value of the interest of such owner in such vessel, and her freight then pending.

"Under the Act, a party is entitled to limitation only if it is 'without privity or knowledge' of the

cause of the loss." In re Hellenic, Inc., 252 F.3d 391, 394 (5th Cir. 2001). "If the shipowner is a corporation, 'knowledge is judged by what the corporation's managing agents knew or should have known with respect to the conditions or actions likely to cause the loss.'" Id.

The burden of proof in a limitation proceeding is divided between the vessel owner and the claimant. An injured party seeking to defeat limitation must first demonstrate that his or her injuries arose out of the negligence or unseaworthiness of the vessel. Brister v. A.W.I., Inc., 946 F.2d 350, 355 (5th Cir. 1991). Once negligence or unseaworthiness has been established, the burden shifts to the vessel owner to establish that it has no privity with or knowledge of the dangerous condition or active negligence that caused the injury. Id. *See, also*, In re Hellenic, 252 F.3d at 394 ("Once the claimant establishes negligence or unseaworthiness, the burden shifts to the owner of the vessel to prove that negligence was not within the owner's privity or knowledge."). Thus, at the trial of this matter, the claimants (including the Movants, who now seek summary judgment) will bear the burden of proving that the vessel's negligence caused the injuries for which they seek compensation.

When a party moves for summary judgment on an issue concerning which he or she will bear the ultimate burden of proof at trial, the allocation of burdens on summary judgment is not the usual one. In such cases, the movant cannot simply declare that there is an absence of evidence supporting the opponent's position, but must present evidence in support of a finding in his or her favor *and* demonstrate that there is no genuine issue as to those facts material to the judgment it seeks. "If the crucial issue is one on which the movant will bear the ultimate burden of proof at trial, then the movant can satisfy its summary judgment burden by submitting evidentiary documents that establish all of the elements of the claim or defense. The burden then shifts to the nonmovant to demonstrate that summary judgment is inappropriate." Resolution Trust Corp. v. Northpark Joint Venture, 958

F.2d 1313, 1322 (5th Cir. 1992), *cert. denied sub. nom.* Dannis v. Resolution Trust Corp., 506 U.S. 1048 (1993).

The Movants' claim against the Carey Salt Company is that it was negligent with regard to the accident in which Mr. Sappington was injured. Mr. Sappington's claim of negligence (which he asserts pursuant to general maritime law), requires that he prove that: (a) there was a duty owed to him by the defendant; (b) the defendant breached that duty; (c) he sustained injury; and (d) a causal connection existed between the defendant's conduct and his injury. Canal Barge Company v. Torco Oil Company, 220 F.3d 370, 376 (5th Cir. 2000). Thus, the Movants must demonstrate, *inter alia*, that there is no genuine issue of material fact that actions taken (or not taken) by Carey Salt Company caused Mr. Sappington's injuries.

The Movants have identified several grounds for finding that Carey Salt Company was negligent in its operation of the vessel, negligent in training Captain Romero prior to placing him in charge of the vessel, negligent in equipping the vessel, and/or negligent in posting notices to other mariners about the cable's presence. The evidence on each of these theories is heavily disputed.[2]

- The Movants argue that decision to take the trip across the Intracoastal Waterway when Mr. Sappington's boat was approaching constitutes negligence; or,

---

[2] In addition to being heavily disputed, much of the evidence presented by the Movants is inadmissible because it refers to subsequent remedial measures taken by Carey Salt Company after the accident at issue here. As the parties are fully aware, the Federal Rules of Evidence place strict limits upon the admissibility of evidence concerning subsequent remedial measures; they are not admissible to prove "negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or instruction." The Movants have nonetheless presented (and relied upon) such evidence and argue that the evidence is admissible because it disproves Mr. Sappington's alleged contributory negligence. This Court is not prepared, in the absence of full and complete briefing through the mechanism of a motion in limine, to rule upon the admissibility of such evidence at trial. For purposes of the present motion, however, the first question concerns Carey Salt Company's alleged negligence, a use for which the proffered evidence clearly is inadmissible.

alternatively, that the ferry's movement across the Waterway should have ceased – and the cable dropped to below water level – when it became clear that Mr. Sappington was approaching; or, alternatively, that Captain Romero should have sounded a horn prior to departing the south bank for the crossing to the north bank.

In response, the Non-movants have produced evidence suggesting that Captain Romero behaved responsibly prior to commencing the crossing and that there was a bend in the Intracoastal Waterway just west of the ferry crossing which prevented Captain Romero from seeing Mr. Sappington's vessel at that time. Moreover, the Non-movants have produced evidence suggesting that Mr. Sappington was traveling so fast that (i) it was not possible for Captain Romero to know, before he began his trip across the Waterway, that Mr. Sappington was approaching, (ii) nor to react in a timely manner to his presence so as to avoid the accident and, (iii) that the sounding of a horn would not have prevented the accident.

- The Movants argue that Captain Romero was inadequately trained to crew the vessel.

However, in response, the Non-movants have produced evidence suggesting that Captain Romero knew what he was doing, knew that he was supposed to maintain his awareness of approaching watercraft, and, with sufficient warning as to Mr. Sappington's approach, would have known how to avoid the accident.

- The Movants argue that the *Tripper III* was inadequately equipped, with a radar that wasn't working and no signs or decals on the vessel indicating that it was a cable ferry.

However, the parties who oppose the motion have produced evidence suggesting that a radar would not have revealed the presence of Mr. Sappington's bass boat (because it was located on the other side of a bend in the Waterway, which the radar could not have seen) in time to avert the accident and argue that they had no duty to place signs or decals on the Tripper III to indicate that it was a

cable ferry. Additionally, they argue that Mr. Sappington (a) had reason to know that the vessel was a cable ferry (because (i) the cable ferry appears in both the National Oceanographic & Atmospheric Administration's Nautical Chart 11350 – applicable to the pertinent portion of the Intracoastal Waterway – and the United States Coast Pilot Handbook for 2003, the latter of which was in Mr. Sappington's possession on the bass boat *and* (ii) Mr. Sappington had piloted his bass boat past the cable ferry earlier in the day), and (b) that he didn't bother to review the information contained in the Coast Guard Pilot Handbook before traveling down the Waterway at a high rate of speed, (c) and declared that his knowledge of the presence of the cable ferry and warnings would not have changed his behavior prior to the accident in any way.

- The Movants argue that the cable constituted a hazardous condition which interfered with the flow of traffic and which was inadequately marked or colored so as to permit mariners to see the hazard as they approached it.

In response, Carey Salt Company notes that the Coast Guard did not impose any requirement upon it that additional markings or coloring be used so as to make it easier to see the cable from a distance, that it was unaware of any other accident having occurred with regard to the cable during the 30+ years that a cable ferry has been operating at that point on the Intracoastal Waterway, and that Mr. Sappington had reason to know (in the form of the Coast Guard Pilot Handbook in his possession, together with his experience of traveling down the Waterway earlier the same day) of the cable's presence, but did not take note of that fact, nor act accordingly.

- The Movants argue that Carey Salt Company had a duty to warn mariners of the danger represented by the cable ferry crossing and that the failure to post signs to provide such warning constitutes negligence.

In response, however, Carey Salt Company notes that the Coast Guard has not imposed a duty to post signs and, moreover, that Mr. Sappington had reason to know (in the form of the Coast Guard Pilot

Handbook in his possession, together with his experience of traveling down the Waterway earlier the same day) of the cable's presence, but did not take note of that fact, nor act accordingly.[3]

In short, the Movants have produced evidence supporting all of their theories of negligence against Carey Salt Company and which, in the absence of countervailing evidence, might support the conclusion they seek. However, the Non-movants have produced evidence challenging each of those theories and seeking to place fault for causation squarely on the shoulders of Mr. Sappington. As a result, it will not be possible for this Court to resolve questions of negligence, liability, limitation of liability, etc., prior to the trial of this matter. The Court notes, however, that the brief analysis reflected hereinabove does not adequately reflect the extent of the disagreement among the parties to the accident as to just exactly what happened and the legal consequences of certain contested facts. Specifically, the parties have relied, in their briefing, upon presumptions which could, if facts supporting those presumptions are proven at trial, substantially affect the burden of proof to which the parties will be held.

---

[3] In addition to arguments concerning the alleged negligence of Carey Salt Company, the Movants have included several arguments that the *Tripper III* was unseaworthy when the accident occurred, and that this alleged unseaworthiness contributed to the cause of the accident. However, it is this Court's understanding that the duty of seaworthiness is owed by a vessel to its crew and to certain categories of other individuals performing services aboard the vessel or, perhaps, upon the vessel's appurtenances. *See, e.g.*, Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625 (1959); Smith v. Harbor Towing & Fleeting, Inc., 910 F.2d 312 (5th Cir. 1990). The Movants have not provided an explanation for how it is that the *Tripper III* owed a duty of seaworthiness to the operator of another vessel who was not on the *Tripper III* when the accident occurred, nor have they cited this Court to any jurisprudence supporting the application of the doctrine of seaworthiness under facts analogous to this case. Moreover, this Court's independent research has not revealed the existence of any jurisprudence which would support the application of the doctrine of seaworthiness to the Movants' claims under the facts of this case. In the absence of any basis for believing that the doctrine of seaworthiness is relevant here, this Court will not consider the Movants' arguments concerning the alleged unseaworthiness of the *Tripper III* at the time of the accident.

The Movants argue that the <u>Pennsylvania</u> Rule should apply to this case because of certain alleged violations of the Rules of the Road by Captain Romero. Were the <u>Pennsylvania</u> Rule to apply here, it is unclear as to its legal effect inasmuch as Carey Salt Company alleges that Mr. Sappington, too, was operating his vessel in violation of one or more Rules of the Road. Even were the Movants correct that a presumption of causation would attach to only Carey Salt Company's alleged violation of the Rules, however (which would have the effect of switching the burden of proof, as to causation, from the Movants to Carey Salt Company), the problem here is that this Court cannot rule upon the applicability of the <u>Pennsylvania</u> Rule to this case because there has been no finding that the alleged rules violations occurred and, moreover, the question of whether such violations occurred is very much contested by the Non-movants. Thus, despite the Movants' attempt to switch the burden of proof on this motion, the current state of the evidence does not permit such a shift at this point. This Court will not speculate, at this time, as to whether or not the Movants will be successful in proving the alleged violations -- and, thus, shifting the ultimate burden of proof -- at the trial of this matter.

The Non-movants, on the other hand, argue that Mr. Sappington's vessel allided with the cable and, as such, that he is presumed to have been at fault in the accident unless he demonstrates that the allision was the fault of the stationary object, that the moving vessel acted with reasonable care, or that the allision was an unavoidable accident. *See* <u>Brunet v. United Gas Pipeline Company</u>, 15 F.3d 500, 503 (5th Cir. 1994). Once again, however, this Court cannot ascertain whether the presumption applies under the facts of this case because it is uncertain whether the accident was an allision or a collision and, as noted above, a determination of whether the accident was or was not an allision cannot be made until trial is held. Thus, despite the Non-movants' argument in favor of

switching the burden of proof as to liability on this motion, the current state of the evidence does not permit such a shift at this point. This Court will not speculate, at this time, as to whether or not the Non-movants will be successful in proving that the accident was an allision – and, thus, shifting the ultimate burden of proof as to liability – at the trial of this matter.

In conclusion, this matter is not in a position to permit summary judgment to be issued in favor of any party at this point in time. For this reason, the Movants' Motion for Summary Judgment will be DENIED for failure to prove that there is no genuine issue of material fact as to Carey Salt Company's entitlement to relief pursuant to the Limitation of Liability Act.[4]

THUS DONE AND SIGNED in Chambers, Lafayette, Louisiana, this ____ day of March, 2006.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

---

[4] In addition to the arguments presented by the Movants concerning negligence and unseaworthiness, they have also included substantial arguments concerning Carey Salt Company's privity or knowledge with regard to the alleged negligence and/or unseaworthiness. As noted above, the second prong in the limitation analysis (once negligence is proven) concerns the vessel owner's privity or knowledge with regard to the proved negligence, and the plaintiff-in-limitation bears the burden of proving that such privity or knowledge does not exist. However, because this Court has found that the Movants have not sustained their initial burden of proof as to the prerequisite of negligence, this Court need not address the second-prong analysis of privity or knowledge on the part of Carey Salt Company.